THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CT-3231-D

| | | |
|---|---|---|
| JAMES C. MCNEILL, | ) | **MEMORANDUM IN SUPPORT** |
| | ) | **OF** |
| Plaintiff, | ) | **DEFENDANTS' MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| v. | ) | |
| | ) | |
| JOSEPH LIGHTSEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

NOW COMES Defendants Lightsey, Averette, Carmon, Chambliss, Cooper, Gillis, Greene, Hawkins, Lolan, Parker, Nerena-Perez, Sweet, Tilley, and Wilson (hereinafter "Defendants"), appearing by and through undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and respectfully submit this memorandum in support of their motion for summary judgment. In support of the motion for summary judgment, Defendants state the following:

## NATURE OF THE MATTER BEFORE COURT

In this case, Plaintiff James C. McNeil ("Plaintiff" or "McNeill"), a pro se prisoner, asserts that Defendants used excssive force against him and also acted with deliberate indifference to his medical needs while he was incarcerated at Polk Correctional Institution ("Polk CI"). [D.E. 1] Defendants now move the Court for summary judgment as to all claims on the grounds that there are no genuine issues of material fact and that they are entitled to prevail as a matter of law. The record evidence demonstrates that Defendants did not use excessive force or act with deliberate indifference to a serious medical need or otherwise violate Plaintiff's

constitutional or other rights under federal or state law. Moreover, Defendants are entitled to prevail as a matter of law based on qualified immunity.

## STATEMENT OF THE CASE

On August 9, 2021, Plaintiff McNeill, proceeding *pro se,* filed a 1983 civil rights complaint in this case alleging that his Eighth Amendment rights were violated by Defendants. [D.E. 1]

Plaintiff's specific allegations arise from an incident at Polk Correctional Institution ("Polk CI") on May 13, 2021. *Id* at 6. Defendants are all employees working at Polk CI in various roles including officers, lieutenants, sergeants and medical personnel. *Id.* Plaintiff alleges Defendants used excessive force against him and acted with deliberate indifference to his medical needs. *Id.* at 3-17.

On March 10, 2022, this Court recommended and directed the clerk to proceed with the management of this case. [DE-16]. On May 11, 2022, the Court issued Requests for Waiver of Service and transmitted those waivers electronically to the North Carolina Department of Public Safety (the "Department") for execution by those defendants who are still employed by that agency. [DE-11].

On September 6, 2022, Defendants filed an Answer to Plaintiff's Complaint and raised various defenses to the claims brought against them. [D.E. 25] On September 15, 2022, the Court entered a Case Management Order setting the deadline for discovery at December 13, 2022 and the deadline for disposition motions at January 12, 2023. [D.E. 27]

On or around October 28, 2022, Plaintiff acting pro-se served discovery on
2

Defendants. On or around October 29, 2022, undersigned counsel and DOJ staff began contacting Defendants and the Agency for the relevant documents and information to respond to Plaintiff's first set of discovery.

On November 28, 2022, Defendants filed a Motion to Extend the Time to respond to the discovery because undersigned counsel had not yet received all the requested information. On January 12, 2023, Defendants moved for an enlargement of the case management deadlines and an extension of time to respond to discovery for the same reason as in November. [D.E. 36]

On January 13, 2023 the Court granted Defendant's motion setting the Discovery Responses on February 12, 2023 and the dispositive motions deadline on March 13, 2023. [D.E. 38]

On February 27, 2023, the Court entered an order extending the case management deadlines, based on Plaintiff's Motion [D.E. 41] ordering the parties shall have until March 24, 2023 to complete discovery and until April 24, to file dispositive motions.

On April 3, 2023, Plaintiff filed a Motion for a Preliminary Injunction and Temporary Restraining Order. [D.E. 46] On April 10, 2023, Plaintiff filed a Motion to Compel Discovery. [D.E. 49] On April 24, 2023, Defendants filed a MET to File Dispositive Motions and a MET to Respond to Plaintiff's Motion to Compel. [D.E. 53]

On April 26, 2023, the Court entered an Order Denying Plaintiff's Motion [D.E. 46] for a Preliminary Injunction and a Temporary Restraining Order and Granted Defendant's MET [D.E. 53] setting the deadline to respond to Plaintiff's Motion to

3

Compel for May 15, 2023 and to file dispositive motions by May 31, 2023. [D.E. 55]

On May 15, 2023, Defendants filed a Response in Opposition to Plaintiff's Motion to Compel. [D.E. 57] On May 17, 2023, Plaintiff McNeill filed a Notice of Appeal to the Court's April 26, 2023 Order [D.E. 55] denying Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order. [D.E. 58] On May 17, 2023, the District Court sent the Appeal to the Fourth Circuit. [D.E. 59]

Defendants now file their dispositive motions on May 31, 2023.

## STATEMENT OF FACTS

On August 9, 2021, Plaintiff McNeil, proceeding *pro se,* filed a 1983 civil rights complaint in this case alleging that his Eighth Amendment rights were violated by Defendants. [D.E. 1]

Plaintiff's allegations arise from an incident at Polk Correctional Institution ("Polk CI") on May 13, 2020. *Id* at 6. Plaintiff alleges Defendants used excessive force against him and acted with deliberate indifference to his medical needs. *Id.* at 3-17. Plaintiff alleges that Defendants are all employees working at Polk CI in various roles including officers, lieutenants, sergeants and medical personnel. *Id.*

### *Plaintiff's Allegations*

Plaintiff's allegations in the Complaint are that each of the Defendants sued in their individual and official capacities, violated his eight amendment constitutional rights. In Plaintiff's Complaint he states that the "date of occurrence" were May 13, 2021 and July 21, 2021. [D.E 1 at 6]. However, in his twelve page narrative explaining what happened, he constantly refers to events that occurred in

4

May 13, 2020 and July 21, 2020. *Id.*

**Alleged Incidents that Occurred Before May 13, 2020.**

Plaintiff alleges that on January 31, 2020, a group of Polk Correctional Staff came into his cell and stole 80 of his family pictures and his mother's obituary. [D.E 1 at 7].Plaintiff also alleges that on March 29, 2020, Correctional Officer Sabrina Spence "committed abuse taunting me that is considered a PREA act". *Id.* Plaintiff alleges that in response he submitted several complaints to various DPS and prison officials. *Id.* He alleges he submitted these complaints to DPS and prison official because Correctional Officer Alfred Threat, who was assigned to receive these complaints on his unit "repeatedly obstructed my submissions." *Id.* Plaintiff alleges that Correctional Officer Spence continued disrespecting him and retaliating with slander.

**Alleged May 13, 2020 Incidents**

Plaintiff alleges that on May 13, 2020 he was subjected to excessive use of force by Defendants and afterwards in the medical unit, Defendants were deliberately indifferent to his medical needs. [D.E 1 at 7]

Specifically, Plaintiff alleges that on May 13, 2020 at 6:50 a.m. Correctional Officer Spence and Nurse Acher came to his cell door. Plaintiff states that Correctional Officer Spencer was under PREA investigations and alleges that she was prohibited with contact with him during the pending PREA investigations. Plaintiff states he told Correctional Officer Spencer she was under PREA and she allegedly pulled out her pepper spray and said "I'll spray your ass" *Id.* at 7

5

Plaintiff then states that he "went into offense mode" at that time. *Id.* at 7 Plaintiff does not specify what he meant by going into "offense mode". Plaintiff alleges that Lieutenant Averette came to his cell door one hour later at 8:05 a.m. accompanied by Correctional Officers Chambliss and Nerena-Perez. Plaintiff alleged that Averette asked him to cuff up but he "never gave him an opportunity to cuff up at that time." *Id.* at 8.

Plaintiff alleges that Averette came back with seven guards with riot gear, including Sgt. Gillis, Correctional Officers Tilley, Greene, Carmon, Chambliss, Lolar and Nerene-Perez. *Id.* at 8.

Plaintiff alleges that these correctional officers ordered him to stick his hands out of the food passage door to submit to restraints. *Id.* During this time, Sgt. Gillis twisted his hands and yanked him out of the cell. *Id* Plaintiff then alleges that the officers threw him to the ground with the correctional officers kicking him in the head, face and other parts of his body. Plaintiff alleges he was attacked on the ground with his hands behind his back. *Id*

Plaintiff then alleges as he was being escorted away Correctional Officer Tilley punched him in the mouth. Plaintiff alleges that Lt. Averette saw him being assaulted and never intervened. Plaintiff alleges that this was done with Warden Hawkins and Associate Warden Cooper's Approval. *Id* at 9.

**<u>Medical Treatment</u>**

Plaintiff then alleges he was taken to medical for his injuries and was treated by Nurses Parker and Hite. *Id.* at 10. He alleges his lip was split open, a cut was in

6

his right eyebrow and he had lower back, shoulder and hip injuries. Plaintiff alleges that while he was being treated, Correctional Officer Greene stood on top of his foot "with all of his weigh for 3 to 4 minutes and the guards thought it was funny and giggled". *Id.*

Plaintiff alleges that the Unit Manager Eldridge Walker came to the medical station and "congratulated Tilley, Carmon and Greene for the use of excessive force upon me" Plaintiff was then treated for his injuries by Parker, P.A. Mbua, Washington and Hite while Tilley "continued using profane language towards me and saying derogatory sexual things about my daughter" Plaintiff essentially explains that the medical staff did nothing with the correctional staff taunted Plaintiff with verbal threats. Plaintiff then alleges he was taken back to his cell in full restraints.

**July 21, 2020 Medical Encounter**

Plaintiff then alleges that after the incident on May 13, 2020, he wrote several letters of complaint but no one took action. [D.E. 1 at 10] Plaintiff alleges that Lightsey wrote an x-ray order for his upper back instead of his lower back area that he can complained of. *Id.* Plaintiff alleges he was treated by Lightsey and Sweet on July 21, 2020. Plaintiff alleges that Lightsey was sitting with his legs wide open and he noticed "that he rubbed his hand across his genitals three times in around eight minutes". Plaintiff also alleges that Lightsey never examined him and reported the unprofessional conduct, taunting and ridicule of Lightsey. *Id.*

***Moving Defendants' Forecast of Evidence***

7

Plaintiff McNeill (OPUS # 0275601) is currently serving a life-sentence for first-degree murder (principal) *See Exhibit and available on the NC DAC website.*[1] Since his conviction and sentencing in 2014, Inmate McNeill has been found guilty after a hearing of committing over 278 disciplinary infractions in prison, with over 70 infractions for making False Allegations Against Staff. *See List of Offender Disiplinary Report, attached as Exhibit and available publicly online on the NC DAC website.* Plaintiff has also committed numerous other disciplinary infractions for serious offenses such as Assaulting Staff, Threatening to Harm/Injure Staff, Involvement with a Gang, which is why he was placed in restrictive housing and an elevated custody control leave. *Id.*

On December 2, 2019 a Gatekeeper Order was entered in the NC Industrial Commission ("NCIC") following Plaintiffs numerous dismissed complaints against DAC Correctional Officers and staff under the Tort Claims Act. *Exhibit NCIC Gatekeeper Order*

In the gatekeeping order against James McNeill it states that "Plaintiff has filed a total of forty (40) civil actions" with the NC Industrial Commission under the State Tort Claims act between 2015 and 2019. *Id at 2.* The Gatekeeper Order explains that "while Plaintiff brings a unique flavor to his arguments in each of these actions, they are unified by their unwavering assertion that staff at Polk Correctional

---

[1] *Plaintiffs Offender Information Report, attached as Exhibit A is available publicly online on the NC DAC website.*
https://webapps.doc.state.nc.us/opi/offendersearch.do?method=view

Institution or named employees with Defendant in Raleigh have violated PREA standard or have failed to take corrective actions when dealing with Plaintiff's allegations." *Id.* The NCIC gatekeeper order further explains that Plaintiff cannot bring any new actions without including a certification from an attorney in good standing. *Id at 8.*

**Correctional Staff Defendants**

Plaintiff brings excessive use of force claims against Defendants Gillis, Chambliss, Greene, Carmon, Tilley, Lolar, Averette, who are all correctional staff at Polk CI. [D.E. 1 at 3-6]

**Supervisory Staff Defendants**

Plaintiff brings supervisory claims against Defendant Hawkins and Cooper who were the Warden and Associate Warden at Polk CI as well as Wilson who was the Medical Director for DPS. [D.E. 1 at 3-6]

**Medical Staff Defendants**

Plaintiff brings deliberate indifference claims against Defendants Lightsey, Wilson, Sweet, Parker who are all medical staff at Polk CI. *Id.*

**May 13, 2020 Incident**

On May 13, 2020, at approximately 7:25 am Correctional Officers Spence and Nurse Archer were delivering some medicine to Plaintiff McNeill. *See Exihibit D-Incident Report and Statements of Witnesses.* During this encounter Plaintiff McNeill pushed the protective shield out of place and threw multiple cups of urine and feces out of the food passage door that struck them in various locations on their clothes,

9

shoes and bare skin. *Id.* The urine and feces also got all over the walls and door area.

Plaintiff McNeill assaulted staff by throwing what appeared to be urine and feces and refused all directives to submit to restraints. *Id.* Plaintiff McNeill threatened to assault any staff entering the sally-port area. *Id.*

After Officer Spence and Nurse Archer were assaulted by Plaintiff McNeill with feces and urine, Defendant Sgt. Gillis, the assigned Building Sergeant of HCON assessed the situation and made the determination to have staff immediately exit the area due to the amount of what appeared to be feces on the floor and walls. *Id.* Gillis made the decision to leave the food passage door unsecured do to the risk of further assault on him and the staff in the area. *Id.* Gillis notified the Shift Officer in Charge fo the incident and was instructed to assemble AUOF team to participate in a cell extraction. *Id.*

At approximately 8:15 am, the Shift Officer in Charge arrived and conducted a Conflict Resolution with Plaintiff which was unsuccessful. *Id.* Sgt. Gillis was given the instruction to participate in the Cell Extraction per policy. *Id.*

Gillis conducted a Conflict Avoidance which was successful and Plaintiff submitted to restraints. *Id.* Gillis then called for the door to be opened. As the door was opening, Plaintiff began jerking away from the control of staff and also appeared to charge at the protective shield. *Id.* Staff quickly gained control and placed Plaintiff on the floor. While on the floor, Plaintiff continued to resist and struggle with staff and fail to follow several directives to abandon his resistance. *Id.*

Staff were able to gain control and apply restraints and assist the Plaintiff to

10

his feet. Gillis did observe a laceration on the right side of Plaintiff's head, which could have possibly occurred while the Plaintiff was being placed on the floor. *Id.* Plaintiff was properly restrained and escorted to the Nurse's Station and assessed. Once the assessment was completed, the Plaintiff was escorted back to his cell where he restraints for the allotted time frame per policy. *Id.*

Defendants Carmon, Chambliss, Greene, Lolar, Spence, Tilley and Averette were the Defendants who participated in the cell extraction per DPS policy. *Id.*

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the "record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, [and] interrogatory answers" show "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). The moving party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the non-moving party cannot rest on bare pleadings alone, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted & emphasis removed). A district court should grant summary judgment when the record as a whole could not support a reasonable jury returning a verdict for the non-

11

moving party. *See id.; Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An otherwise properly supported motion for summary judgment will not be defeated by the existence of any factual dispute; only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *See id.* at 248–49. When the nonmoving party fails to make a sufficient showing establishing an essential element of his case and he bears the burden of proof on that issue then there is no genuine issue of material fact, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* at 323.

"Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence in support of'' the nonmoving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quotation omitted); *see also Liberty Lobby*, 477 U.S. at 252 (1986) (noting that a mere scintilla of evidence is not sufficient). Thus, a nonmoving party who relies on mere belief or conjecture, or the allegations and denials contained in his pleadings, cannot avoid summary judgment. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003), *cert. denied*, 541 U.S. 1042 (2004).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"[T]he plaintiff may not respond simply with general attacks upon the

12

defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (emphasis added).

"It is the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club*, 346 F.3d 514, 526 (4th Cir. 2003) (reversed, in part, on other grounds); *Celotex*, 477 U.S. at 323–24, ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.").

## LEGAL ARGUMENT

For the below reasons, Defendants should be granted summary judgment.

**THE ALLEGATIONS IN THE COMPLAINT AND DEFENDANTS FORECAST OF EVIDENCE DEMONSTRATE THAT DEFENDANTS DID NOT VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS. PLAINTIFF HAS FAILED TO ESTABLISH A VIOLATION OF THE EIGHTH AMENDMENT BY DEFENDANTS**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and protects prisoners from the unnecessary and wanton infliction of pain," *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement, such as adequate food, clothing, shelter, and medical care. *Farmer*, *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Additionally, protection from

13

other inmates is a condition-of-confinement that is subject to the strictures of the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 303, (1991). "[A] prison official violates the Eighth Amendment only when two requirements are met[.]" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The first requirement is the deprivation of an objectively "sufficiently serious" basic human need. *Id.* "The second part of inquiry asks whether prison officials subjectively acted with 'deliberate indifference to inmate health or safety,' meaning that they actually knew of and disregarded the inhumane nature of the confinement." *Williams v. Branker,* 462 F. App'x 348, 353 (4th Cir. 2012) *(citing Farmer,* at 837).

## Defendant are Entitled to Summary Judgment on Plaintiff's Excessive Force Claim.

Plaintiff brings excessive use of force claims against Defendants Gillis, Chambliss, Greene, Carmon, Tilley, Lolar and Averette for the incident that occurred on May 13, 2020.

Defendant did not use excessive force on Plaintiff. Defendants used an appropriate and reasonable measure of force in response to Plaintiff. Plaintiff cannot present any credible evidence upon which a reasonable jury could return a verdict in his favor. Therefore, there are no genuine issues as to any material fact and Defendants are entitled to judgment as a matter of law.

The Eighth Amendment protects prisoners from the "unnecessary and wanton infliction of pain[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[A] prison official violates the Eighth Amendment only when two requirements are met." *Farmer v.*

14

*Brennan*, 511 U.S. 825, 834 (1994). The first requirement is the deprivation of an objectively "sufficiently serious" basic human need and the second is a "sufficiently culpable state of mind." *Id.* In analyzing an excessive force claim, the court will first inquire "whether the prison official acted with a sufficiently culpable state of mind (subjective component)." *Parker v. Stevenson*, 625 F. App'x 196, 198 (4th Cir. 2015).

"[T]he core judicial inquiry regarding the subjective component of an excessive force claim is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). In determining whether prison officials have acted maliciously and sadistically, a court should balance: (i) "the need for the application of force," (ii) "the relationship between the need and the amount of force that was used," (iii) "the extent of the injury inflicted," and (iv) "the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials"; and (v) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 320-21. "Moreover, [courts] must accord due deference to a Defendant's efforts to restrain a detainee when faced with a dynamic and potentially violent situation, otherwise, [courts] would give encouragement to insubordination in an environment which is already volatile enough." *Scarbro v. New Hanover County*, 374 F. App'x. 366, 370 (4th Cir. 2010) (internal quotations omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Prison officials may not retaliate against an inmate for exercising a

constitutional right. *See Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978). A successful retaliation claim, request a plaintiff to first allege that "the retaliatory act was taken in response to the exercise of a constitutionally protected right[.]" *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Then, the plaintiff must demonstrate that he "suffered some adversity in response to her exercise of protected rights[.]" *Am. Civil Liberties Union, Inc. v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993). This Court's order further indicates that "[i]n addition, a plaintiff must come forward with specific evidence 'establish[ing] that but for the retaliatory motive the complained of incident[s] ... would not have occurred.'" DE-10 at 11 *quoting Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995); *accord Ponchik v. Bogan*, 929 F.2d 419, 420 (8th Cir.1991) (plaintiff must show that action would not have occurred "but for" the alleged reprisal); *Collinson v. Gott*, 895 F.2d 994, 1002 (4th Cir. 1990) (Phillips, J., concurring); *McDonald v. Hall*, 610 F.2d 16, 18–19 (1st Cir.1979). Moreover, this Court further noted that "in the prison context, such claims are treated with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Id*. quoting *Adams*, 40 F.3d at 74.

## Defendants are Entitled to Summary Judgment on Plaintiff's Deliberate Indifference Claims.

Plaintiff brings deliberate indifference claims against Defendants Lightsey, Wilson, Sweet, Parker who are all medical staff at Polk CI after the incident that

16

occurred on May 13, 2020.

Defendants were not deliberately indifferent and Plaintiff cannot present any credible evidence upon which a reasonable jury could return a verdict in his favor. Therefore, there are no genuine issues as to any material fact and Defendants are entitled to judgment as a matter of law.

Plaintiff seeks monetary relief from Defendants based on their alleged deliberate indifference to his medical needs. As explained in more detail below, Plaintiff cannot present any credible evidence upon which a reasonable jury could return a verdict in his favor on this claim. Therefore, there are no genuine issues as to any material fact and Defendants are entitled to judgment as a matter of law.

). "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Id.* at 104. The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement, such as adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged test set forth in *Farmer v. Brennan*[.]" *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).

The "objective" prong is the first part of the test and requires plaintiffs to demonstrate that "the deprivation alleged [was], objectively, sufficiently serious." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. at 834 (internal quotations omitted)). The Fourth Circuit has stated that:

17

Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. […] In order to demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions, […] or demonstrate a substantial risk of such serious harm resulting from the prisoners exposure to the challenged conditions[.]

*De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotations and citations omitted). The objective prong requires some evidence of a serious medical need. *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. (internal quotations omitted).

The "subjective" prong is the second part of the test and under this prong plaintiffs must show that prison officials acted with a "sufficiently culpable state of mind." *Scinto* at 225 (quoting *Farmer*, 511 U.S. at 834 (internal quotations omitted). The requisite "state of mind is one of "deliberate indifference" to inmate health or safety. *Farmer*, 511 U.S. at 834.

The Supreme Court held that:

[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. In other words, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d

18

170, 178 (4th Cir. 2014) (internal quotations omitted). Thus "it is not enough that an official <u>should</u> have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (emphasis in original). Accordingly, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson* at 178. "In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).

### **Plaintiff's Deliberate Indifference Claims Fails.**

Defendants are entitled to summary judgment on all claims for two reasons. First, Plaintiff's contentions of liability are insufficient to support a deliberate indifference claim. Specifically, Plaintiff complains of conduct that is not actionable under § 1983. Second, even if the complained of conduct were actionable, Plaintiff fails to present sufficient evidence to satisfy the subjective component of a deliberate indifference claim. Thus, Plaintiff cannot present any credible evidence upon which a reasonable jury could return a verdict in his favor on this claim. Therefore, there are no genuine issues as to any material fact as to Plaintiff's deliberate indifference claim and Defendants are entitled to judgment as a matter of law.

Rudeness and hostility, without more are not actionable under 42 U.S.C. §

1983. *See Wilson v. McKeller*, 254 F. App'x 960, 961 (4th Cir. 2007) (mere threats or verbal abuse, without more, [does] not state a cognizable claim under § 1983"); *Wagner v. Wheeler*, 13 F.3d 86, 92 (4th Cir. 1993) (verbal abuse does not amount to a constitutional violation); *Carter v. Morris*, 164 F.3d 215, 219 n.3 (4th Cir. 1999) (finding that, without more, the alleged use of "racial epithets" toward plaintiff did not "by itself rise to the level of a constitutional violation." More recently this Court adopted the recommendation of the Magistrate Judge and dismissed a prisoner's § 1983 claim noting authority which stated that "verbal harassment, abuse and threats, without more, are not sufficient to state a constitutional deprivation under § 1983." *Ogles v. Willis*, No. 1:10CV557, 2010 U.S. Dist. LEXIS 80578, at *13 (M.D.N.C. Aug. 3, 2010) (internal quotations and citations omitted). Thus, even assuming the allegations that Defendants were rude and hostile are accepted as true and considered evidence by this Court, which Defendants submits they are not and should not, such rudeness and hostility are insufficient to support a claim for deliberate indifference. Additionally, Plaintiff presents no evidence to support his bald assertions.

**Plaintiff Cannot Present Sufficient Evidence to Satisfy the Subjective Component of his Deliberate Indifference Claim.**

Moreover, even aside from the pleading deficiencies, Plaintiff's deliberate indifference claim still fails. The record lacks any evidence that Defendants "subjectively kn[ew] of and disregard[ed] an excessive risk to [Plaintiff's] health or safety." *Jackson*, 775 F.3d at 178. In fact, the record demonstrates quite the opposite.

20

There is no indication in the medical records to even suggest that the care provided by Defendants would come close to establishing the culpable state of mind required to sustain a deliberate indifference claim. *See Farmer*, 511 U.S. at 834.

On this record evidence, assuming, without conceding, a serious medical need, Plaintiff will not be able to prove that Defendants were subjectively aware of the serious medical need, and nonetheless acted inappropriately. Prisoner officials are required to provide inmates with adequate medical care. *Farmer*, 511 U.S. at 832. The evidence demonstrates that Defendants provided more than adequate medical care when they examined Plaintiff. Accordingly, even assuming a serious medical need, and subjective knowledge of such a need, Plaintiff cannot demonstrate that Defendants actions during their encounters constituted a conscious disregard to any risk to Plaintiff's health. Thus, Plaintiff cannot present any credible evidence upon which a reasonable jury could return a verdict in his favor on this claim. Therefore, there are no genuine issues as to any material fact as to Plaintiff's deliberate indifference claim and Defendants are entitled to judgment as a matter of law.

## Defendants are Entitled to Summary Judgment on Plaintiff's Supervisory Liability Claims.

Plaintiff brings several claims against individuals in supervisory roles including Defendants Hawkins and Cooper as well as Wilson. To the extent that Plaintiff is alleging supervisory liability with respect to Defendants, Plaintiff's claims still fail as a matter of law. Section 1983 does not allow liability based upon vicarious

responsibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691 (1978). Instead, liability depends on each Defendant's personal knowledge and actions, not on the knowledge or actions of others. *Id.* Supervisory liability is determined by identifying the persons involved in the decision-making process and whose personal deliberate indifference permitted constitutional abuses to continue unchecked. *Shaw v, Stroud*, 13 F.3d 791,798 (4th Cir. 1994) (internal quotation marks and citations omitted).

Specifically, supervisory liability under § 1983 is dependent upon a showing that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the Plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the Plaintiff. *Id.* at 799. Actual or constructive knowledge is shown by: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the Plaintiff. *Id.* Deliberate indifference is not established by merely by:

> pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. . . . A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.

22

*Id.* (emphasis added)

As stated *supra*, there is no evidence that there was action or inaction by Defendants that led to Plaintiff's alleged injury. Plaintiff may not maintain a claim against Defendants without showing both direct participation in the offense and causation. *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986); *see also White v. Gerbitz*, 892 F.2d 457 (6th Cir. 1989); *Birrell v. Brown*, 867 F.2d 956 (6th Cir. 1989). Plaintiff may not maintain a claim merely because Defendants has the right to exercise control over subordinates. *Vinnedge v. Gibbs*, 550 F.2d 926, 929 (4th Cir. 1977). In order to prove liability based on supervisory actions, Plaintiff must show a deliberate indifference or else the tacit authorization of the subordinates' misconduct. *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035, 84 L. Ed. 2d 796, 105 S. Ct. 1413 (1985).

Plaintiff has proffered proof of neither. The Plaintiff assumes a heavy burden in supervisory cases. *Id.* at 373. As previously stated, Plaintiff cannot satisfy that burden by pointing to a <u>single incident or isolated incidents</u> of misconduct. *Id.*, *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985). Rather, he must show that the supervisor's inaction continued "in the face of documented, widespread abuses. . . ." *Slakan* 1737 F2d. at 373. There simply is no evidence that a similar incident occurred in the past or after this incident. Therefore, Defendants cannot be responsible for supervisory liability.

**DEFENDANTS SHOULD BE ENTITLED TO QUALIFIED IMMUNITY FROM**

23

ANY CLAIMS BY PLAINTIFF FOR MONETARY DAMAGES.

Defendants should receive qualified immunity because Plaintiff has failed to show that the Defendants actually violated any of his clearly established rights. "Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001), *cert. denied*, 537 U.S. 1045 (2002) (quoting *Harlow v. Fitzgerald*, 471 U.S. 800, 818 (1982)). It is an immunity from suit, not just a defense to liability. *Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. 2009).

The doctrine of qualified immunity "balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Qualified immunity's fundamental purpose is intended to give "government officials breathing room to make reasonable but mistaken judgments" and protect "all but the plainly incompetent or those who knowingly violate the law" from the costs of suit. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 179 L. Ed. 2d 1149 (2011) (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *See also Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011). Qualified immunity "'operates to ensure that before they are subject to suit, officers are on notice that their conduct is unlawful.'" *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013) (quoting *Hope v. Pelzer*, 536 U.S. 730, 731 (2002)).

24

A right is "clearly established" where the contours of that right are sufficiently clear so that a reasonable officer would understand that what he is doing violates that right. *Wilson v. Layne*, 526 U.S. 603, 615 (1999). Thus, even if a plaintiff demonstrates a constitutional violation, an official is nonetheless entitled to qualified immunity if a reasonable person in the official's position "could have failed to appreciate that his conduct would violate those rights." *Meyers v. Baltimore Cnty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013) (citation omitted). If there is any legitimate question as to whether an officer's conduct amounts to an abridgement of a constitutional right, the officer is entitled to qualified immunity. *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994).

The undisputed evidence demonstrates that the Defendants are entitled to qualified immunity to because their conduct was objectively reasonable in light of constitutional requirements. When examining the evidence in the record, there is not sufficient evidence to allow a jury to actually conclude that Defendants' conduct violated Plaintiff's constitutional rights. As a result, Defendants are entitled to qualified immunity and Plaintiff's claims should be dismissed.

## DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW AS TO ANY CLAIMS AGAINST THEM IN THEIR OFFICIAL CAPACITIES.

Plaintiff attempts to sue Defendants in their official capacities. [D.E. 1 at 3-6]. A lawsuit filed against a state official in his or her official capacity is essentially an action against the state. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

25

The law is clear, neither a state nor an official acting in an official capacity is a "person" subject to suit under 42 U.S.C. § 1983. Furthermore, the Eleventh Amendment generally bars claims against states in state or federal courts. *Alden v. Maine*, 527 U.S. 706, 712-13 (1999). While Congress can abrogate the states' sovereign immunity, it has not done so with regard to claims under 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 343 (1979). Moreover, "[t]he State of North Carolina has not waived its sovereign immunity for suit under § 1983[.]" *Frazier v. Murray*, No. 4:96-CV-168-BO(1), 1997 U.S. Dist. LEXIS 22039, at *9 (E.D.N.C. Dec. 15, 1997) Accordingly, Plaintiff cannot maintain this Section 1983 action against Defendants in their official capacities. Therefore, Defendants are entitled to summary judgment as to Plaintiff's claims against them in their official capacities.

## I. PLAINTIFF CANNOT PREVAIL ON CLAIMS AGAINST DEFENDANTS HE DOES NOT ALLEGE WERE PERSONALLY DEPRIVING HIM OF HIS RIGHTS.

Plaintiff's complaint is voluminous, naming many individuals participating in multiple claims over many different occasions. Plaintiff does not allege that each and every Defendant committed all the specific constitutional violations in the complaint. These individuals and claims should be dismissed out of the complaint. It is well settled that "[i]n order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the Plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). The requirement that a target Defendant be personally involved in the deprivation in

26

order to support a § 1983 action has been applied to similar claims as made by Plaintiff. *See McNeill v. Norris*, No. 5:15-CT-03193-D, 2018 U.S. Dist. LEXIS 139838, at *12 (E.D.N.C. July 23, 2018) (dismissing claims against one Defendant whom the Plaintiff failed to establish actually participated in the use of force); *Turner v. Turner*, No. 1:14CV379, 2014 U.S. Dist. LEXIS 175380, at *9 (M.D.N.C. Dec. 19, 2014) (allowing summary judgment as to a Defendant whose "involvement in the incident appears to have been so minimal so as to preclude a § 1983 claim under the Eighth Amendment").

Plaintiff does not allege, nor has he developed, any evidence that indicates that all Defendants were in any way involved in all the alleged unconstitutional acts. Thus, these Defendants could not be liable under Section 1983 for any claim arising out of the alleged unconstitutional acts. Therefore, there are no genuine issues as to any material fact and these Defendants are entitled to judgment as a matter of law on any such claims.

## CONCLUSION

For the foregoing reasons, this Court should grant summary judgment granting summary judgment in favor of Defendants and dismiss Plaintiff's action.

This the 31st day of May, 2023.

**JOSHUA H. STEIN**

27

ATTORNEY GENERAL

**/s/**Bryan G. Nichols
Bryan G. Nichols
Assistant Attorney General
N.C. State Bar No. 42008
N.C. Department of Justice
Public Safety Section
P.O. Box 629
Raleigh, North Carolina 27602-0629
Telephone:   (919) 716-6568
Facsimile:   (919) 716-6761
E-Mail:      bnichols@ncdoj.gov

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

I hereby certify that the date indicated above, I electronically filed the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system, and that on the date indicated below, I have served a copy of same upon the Plaintiff, a *non* CM/ECF participant via first-class regular United States Mail addressed as follows:

James C. McNeill
OPUS No. 0275601
Granville Correctional Institution
1001 Veazey Road
Butner, NC 27509

This the 31st day of May, 2023.

/s/ Bryan G. Nichols
Bryan G. Nichols
Assistant Attorney General

28